UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BRET BEILER, | ) |
|       Plaintiff, | ) ) ) |
| vs. | ) ) CAUSE NO. 1:11-CV-380 PS |
| JAY COUNTY SHERIFF'S OFFICE, JAY COUNTY SECURITY CENTER, SHERIFF LARRY RAY NEWTON, JR., COMMANDER NATHAN KEEVER, BETSY GAGLE, RACHAEL (MATRON 1), and SWANSON SERVICES CORPORATION, | ) ) ) ) ) ) ) ) |
|       Defendants. | ) |

OPINION AND ORDER

Bret Beiler has been confined at the Jay County Jail on two occasions during the last three years, and is not pleased with a wide range of conditions of confinement he endured there. Some of his complaints are downright petty while others are potentially serious. Beiler was at the jail from October 3, 2009 through January 21, 2010, and again from August 25, 2011 until February 24, 2012. He filed this action when he was a prisoner confined at the jail, but he has since been released from custody.

Beiler filed a complaint [DE 1] and two amended complaints [DE 7 and 13], which he supplemented on January 10, 2010 [DE 19], and again on February 3, 2012 [DE 23]. This matter is before the Court on Beiler's third amended complaint [DE 32], which replaced all of his earlier amended and supplemental complaints. The third amended complaint names as defendants the Jay County Sheriff's Office, the Jay County Security Center ("Jay County Jail"), Sheriff Larry Ray Newton, Jr., Jail Commander Nathan Keever, Jail officials Betsy Gagle and

"Rachel, Matron #1," and Swanson Services Corporation [DE 32 at 2]. Beiler alleges that Swanson Services Corporation "provided inmate Commissary (store) products and inmate account management (balance) and other services" to the Jay County Jail [DE 32 at 17].

Pursuant to § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, or any portion of a complaint, for failure to state a claim upon which relief can be granted. Courts apply the same standard under § 1915A as when addressing a motion under RULE 12(b)(6). *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006).

In the context of a motion to dismiss for failure to state a claim, the United States Supreme Court has stated that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). Instead the Court held that the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. This means that the complaint must meet a threshold level of plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). But even after *Twombly* and *Iqbal*, I must still liberally construe *pro se* complaints, because they are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## I. THE JAY COUNTY JAIL AND THE
## JAY COUNTY SHERIFF'S DEPARTMENT

The third amended complaint names the Jay County Jail as a defendant. But Beiler may not proceed against the jail in this action because § 1983 imposes liability on any "person" who violates an individual's federally protected rights "under color of state law." A jail "is not a 'person' — it is not a legal entity to begin with." *Powell v. Cook County Jail,* 814 F.Supp. 757, 758 (N.D. Ill. 1993).

Beiler's third amended complaint also names the Jay County Sheriff's Office as a defendant. But under Indiana law, a "sheriff's department" has no separate corporate existence and is therefore not a suable entity. *Slay v. Marion County Sheriff's Dept.*, 603 N.E.2d 877, 887 (Ind Ct. App. 1992); *Jones v. Bowman*, 694 F.Supp. 538, 544 (N.D. Ind. 1988) ("A city's police department is merely a vehicle through with the government fulfills its policy functions and is not a proper party defendant. The court can find no reason why the same conclusion would not apply to a county sheriff's department."); *Gillespie v. City of Indianapolis*, 13 F.Supp.2d 811, 816 (S.D. Ind. 1998).

## II. CLAIM THAT BEILER WAS SUBJECTED TO CRUEL AND UNUSUAL
## PUNISHMENT BETWEEN OCTOBER 28, 2009 AND NOVEMBER 17, 2009

In Count 1 of his third amended complaint, Beiler asserts that he was confined in an isolation cell from October 28, 2009 through November 17, 2009, in conditions that constituted cruel and unusual punishment. This is not a claim that was presented in his original complaint [DE 1], though it was raised in his first amended complaint [DE 4].

"In general, the limitations period in a § 1983 case is governed by the personal injury laws of the state where the injury occurred." *Kelly v. City of Chicago*, 4 F.3d 509 (7th Cir.1993). Section 1983 claims are considered to be personal injury claims for purposes of determining the

applicable state statute of limitations. *Wilson v. Garcia*, 471 U.S. 261 (1985). "Indiana law requires that any action for injuries to the person or character must be commenced within two years after the cause of action accrues. I.C. 34-11-2-4 (formerly Ind. Code § 34-1-2-2(1))." *Doe v. Howe Military School*, 227 F.3d 981, 988 (7th Cir. 2000); *see* also *Snoderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001) (Two-year statute of limitations "is applicable to all causes of action brought in Indiana under 42 U.S.C. § 1983").

The clerk of this court received Beiler's first amended complaint on December 2, 2011. This was the first complaint in which Beiler alleged that he was confined in an isolation cell in October and November 2009. The "mailbox" rule established in *Houston v. Lack*, 487 U.S. 266 (1988), under which a prisoner's submissions to the court are to be deemed "filed" on the date they are delivered to prison authorities for forwarding to the district court, applies to the initial filing of complaints with the court. *Cooper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995). Giving a prisoner the benefit of the inference to which he is entitled at the screening stage, I normally accept the date a prisoner signs his complaint as the date he delivered it to prison officials for mailing. A complaint is clearly still in the prisoner's possession the day he signs it, and it cannot have been submitted for mailing before that date. Because Beiler signed his first amended complaint on December 2, 2011, for purposes of this order I will consider any events occurring after December 2, 2009, as being within the statute of limitations.

The events Beiler complains of in Count 1 of his third amended complaint occurred between October 28 and November 17, 2009. Because he filed his first amended complaint on December 2, 2011, these incidents are beyond the two-year statute of limitations. A plaintiff may not amend his complaint to add claims after the statute of limitations has run unless the claims relate back to an earlier complaint. The relation back of amended complaints is governed by

4

Rule 15(c) of the Federal Rules of Civil Procedure, which states that an amendment of a pleading relates back to the date of the original pleading when:

> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of a party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Rule 15(c) was amended in 1991 to provide that relation back is permitted not only if the claim or defense in the amended pleading arises out of the same conduct, transaction or occurrence as the original pleading, but also if the law that supplies the statute of limitations would authorize relation back. Indiana law provides that after the limitations period has run, a plaintiff may add new defendants only by showing that the amendment relates back to the original complaint. *Moore v. State of Indiana*, 999 F.2d 1125, 1130 (7th Cir. 1993), *citing Hupp v. Hill*, 576 N.E.2d 1320, 1327 (Ind. App. 1991). Therefore, the analysis of this amended complaint must be based on a straightforward application of Rule 15(c)(2) and (3).

Beiler did not mention his claim that he had been placed in an isolation cell in 2009 in his original complaint, nor did he name any of the individual defendants he eventually added in his amended complaints. As a result, the third amended complaint does not relate back to the original complaint in this case under either Rule 15(c)(2) or Rule 15(c)(3). As a result, Beiler

may not now add the claim that he was unlawfully confined in an isolation cell from October 28, 2009 until November 17, 2009. The limitation period has expired on that claim.

### III. CLAIM THAT BEILER WAS PROVIDED AN INADEQUATE DIET

Beiler alleges that he was confined at the Jay County Jail from October 3, 2009 until January 21, 2010, and again from August 25, 2011 through February 24, 2012. In Count 2 of his third amended complaint, Beiler alleges that he was subjected to cruel and unusual punishment during both periods of confinement because the food jail officials provided for him was "wrongful, harmful, inhumane, insufficient, and deficient" [DE 32 at 5]. He alleges that as a result of the diet he was given he suffered from constant hunger pangs, malnourishment, weight loss, wasting weakness, mental anguish, and psychological problems [DE 32 at 6].

Beiler alleges that the defendants' actions violated rights protected by the Constitution's Fifth, Eighth, and Fourteenth Amendments. In addressing a claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the defendants' actions. *Graham v. Conner*, 490 U.S. 386, 394, (1989). The Fifth Amendment's due process clause relates only to the federal government and its agencies. *See Andrews v. Consolidated Rail Corp*. 831 F.2d 678, 681-83 (7th Cir. 1987). The Fourteenth Amendment's due process clause protects pretrial detainees and the Eighth Amendment's cruel and unusual punishments clause protects the rights of those convicted of crimes. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

Beiler does not state in his third amended complaint whether he was at the jail as a pretrial detainee or was serving time on a conviction. But that does not matter at the screening stage because "[a]lthough the Eighth Amendment only applies to convicted prisoners . . . the same standard applies to pretrial detainees under the Fourteenth Amendment's due process clause." *Williams v. Rodriguez*, 509 F.3d 392, 401 (7th Cir. 2007).

6

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

The Constitution requires that prison and jail inmates receive adequate amounts of nutritious food. *See Farmer v. Brennan*, 511 U.S. at 832. Giving Beiler the benefit of the inferences to which he is entitled, I cannot say that he can prove no set of facts consistent with his dietary claims under the provisions of the Eighth or Fourteenth Amendment. However, his allegation that the defendants' actions violated provisions of the Fifth Amendment state no claim upon which relief can be granted.

This claim was not presented in Beiler's original complaint; it was first pled in his first amended complaint. Accordingly, all claims prior to December 2, 2009, are barred by the statute of limitations, and I will allow Beiler to proceed on this claim for the period beginning on December 2, 2011, and ending on February 24, 2012, when he was released from custody.

## IV. CLAIM THAT ON DECEMBER 11, 2009, BEILER WAS SUBJECTED TO LOUD CONSTRUCTION NOISE AT THE JAIL

In Count 3 of his third amended complaint, Beiler alleges that he was "exposed to a dangerous, continuous, harmful, and deafening construction noise . . . on December 11, 2009[,] from the hours of 1200 hrs. until 1400 hrs. . . ." [DE 32 at 9]. Conditions that merely cause inconvenience and discomfort or make confinement unpleasant do not rise to the level of constitutional violations. *Del Raine v. Williford*, 32 F.3d 1024, 1050 (7th Cir. 1994) (Manion, J. concurring). The Jay County Jail is "a small, rural jail, and jails do not have to duplicate the amenities of small, rural hotels." *Martin v. Tyson*, 845 F.2d. 1451, 1457 (7th Cir. 1988). "To

7

make out a claim under 42 U.S.C. § 1983, a plaintiff must show that intentional actions of the defendants served to deprive him of a constitutional right." (*Id.*).

The plaintiff alleges that for two hours on December 9, 2009, he had to listen to construction noise while the jail was being repaired. This is one of those petty complaints that I referenced at the beginning of this Opinion. Although it may be have been annoying for Beiler to listen to construction noises for two hours, objectively it did not deprive him of the minimal civilized measure of life's necessities. This allegation states no claim upon which relief can be granted.

## V. CLAIM THAT BEILER WAS SUBJECTED TO SUBFREEZING TEMPERATURES AT THE JAIL

In Count 4 of his third amended complaint, Beiler alleges "that during fourteen (14) days from November 29, 2009 and up until and including December 13, 2009[,] he was exposed to inhumane, dangerous, and harmful conditions in Cell Block 2" when the heating system for that cell block broke down [DE 32 at 11]. He alleges that even though he complained about the cold, he was not relocated within the jail or even given "any extra blankets or long clothing or underwear or thermal underwear or socks . . . and neither was any other adequate heat source provided by them for Beiler (and other inmates)" on the cell block [DE 32 at 11]. Beiler did not present this claim in his original complaint, and first pled it in his first amended complaint.

Beiler alleges that the defendants' actions violated rights protected by the Constitution's Fifth and Eighth Amendments and the Fourteenth Amendment's due process and equal protection clauses. Beiler's allegations state no claim under the Fifth Amendment because that amendment's due process clause relates only to the federal government and its agencies. *See Andrews v. Consolidated Rail Corp*. 831 F.2d at 681-83. Beiler states no equal protection claim because the Fourteenth Amendment's equal protection clause directs that all persons similarly

8

situated should be treated alike. *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Beiler does not allege that he was treated differently than similarly situated inmates. Rather, he alleges that when the jail had heating problems, the officials deprived him and all of the other inmates on the cell block of adequate heat and clothing.

"Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment," *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997), citing *Farmer v. Brennan*, 511 U.S. at 833-834, but prisoners are entitled to "the minimal civilized measure of life's necessities," including adequate shelter. For this reason, prisoners have a right to protection from extreme cold. *Dixon v. Godinez*, 114 F.3d 640 at 644. The United States Supreme Court has noted that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991).

Giving Beiler the benefit of the inferences to which he is entitled at the pleading stage, I cannot say that his claim that Jay County Jail officials left him in a cold cell without adequate means to keep warm does not state a plausible claim under the Eighth or Fourteenth Amendment.  I will allow Beiler to proceed against the defendants on his claim that Jay County Jail officials left him in a cold cell without adequate clothing for the period from December 2, 2009 through December 13, 2009.

## VI. CLAIM THAT THE DEFENDANTS ENGAGED IN "PRICE GOUGING" ON ITEMS SOLD TO INMATES AT THE JAIL COMMISSARY

In his fifth cause of action, Beiler alleges that the Jay County jail violated several provisions of the United States Constitution and federal law by engaging in "price gouging" at the jail commissary. According to the third amended complaint, the defendants charged more for commissary items than the items cost in retail stores [DE 30 at 14]. Even if true, however, this practice states no federal Constitutional claim because inmates have no Constitutional right to demand items for purchase at the commissary at the lowest possible price. *See French v. Butterworth*, 614 F.2d 23, 25 (1st Cir. 1980).

## VII. ALLEGED RETALIATION AGAINST THE PLAINTIFF FOR FILING GRIEVANCES

In Count 6 of his third amended complaint, Beiler alleges that defendants Newton, Keever, and Gagle retaliated against him for filing grievances. Retaliation against a prisoner for filing a grievance or complaining about treatment by officials states a claim upon which relief can be granted. *See Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir.2000); *Sprouse v. Babcock*, 870 F.2d 450 (8th Cir. 1989); *Dixon v. Brown*, 38 F.2d 379 (8th Cir. 1994). To establish a retaliation claim, Beiler must establish first that he engaged in a constitutionally protected activity, and second that engaging in that activity was a substantial or motivating factor in the defendant's actions against him. *Mt. Healthy City School District v. Doyle*, 429 U.S. 274 (1977); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009).

"There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. Otherwise, the retaliatory act is

simply *de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2nd Cir. 2001) (citations and quotation marks omitted). *See also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir.1982).

The third amended complaint lists eight separate instances in which Beiler alleges that jail officials retaliated against him for fling grievances. The first incident occurred on December 5, 2009, when an "unknown" correctional officer allegedly "placed [an] Inmate Grievance Form in a puddle of milk on purpose because Beiler requested an Inmate Grievance Form when Beiler was dissatisfied with the breakfast . . ." [DE 32 at 18]. This allegation does not implicate any of the defendants named in the third amended complaint. Section 1983 creates a cause of action for damages based on personal liability. A plaintiff must show the defendant's personal involvement or participation, or direct responsibility for the conditions of which he complains, *Starzenski v. City of Elkhart*, 87 F.3d 872, 879 (7th Cir. 1996), by demonstrating a causal link between the defendant's conduct and the plaintiff's injury. *Benson v. Cady*, 761 F. 2d 335, 339 (7th Cir. 1985). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). The doctrine of *respondeat superior*, - which allows a superior to be held liable for subordinates' actions in some types of cases, has no application to § 1983 actions. *Moore v. State of Indiana*, 999 F.2d 1125, 1129 (7th Cir. 1993). In any event, placing a grievance form in a puddle of milk is *de minimis* and states no retaliation claim upon which relief can be granted.

As his second incident, Beiler alleges that on December 29, 2009, a non-defendant staff member threatened him with punishment if Beiler "didn't keep his name out of Beiler's grievances" (DE 32 at 18). This claim does not implicate any of the defendants named in the complaint. Beiler also asserts that on December 10, 2009, Sheriff Newton "committed

unprofessional conduct toward the plaintiff . . . by taunting Beiler and saying . . . 'if you want a Big Mac then don't put yourself in a position where you end up at the security center'" [DE 32 at 18]. This incident is *de minimis*, and states no claim upon which relief can be granted. Simple verbal harassment does not violate a prisoner's constitutional rights. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000).

Beiler next alleges that on September 19, 2011, defendant Gagle made an "adverse communication" toward Beiler, *i.e.* she told Beiler 'if you are going to write a grievance on me spell my name right'" [DE 32 at 18]. This is another trifle; it doesn't even appear to constitute retaliation, and to the extent it could be considered retaliation, it is *de minimis*.

Beiler asserts that on September 29, 2011, defendant Gagle "made an unreasonable and or unwaranted search or probe for JCSO/JCSC into Beiler's legal file against said Agencies and read the file where she found [an] unfiled written INMATE GRIEVANCE against her person" [DE 32 at 19]. He further alleges that the next day, September 30, 2011, defendant Gagle "arbitrarily locked Beiler down in isolated confinement 'up front' in a cell for two (2) days as punishment." *Id*. Giving Beiler the benefit of the inferences to which he is entitled at the pleading stage, I cannot say that Beiler can prove no set of facts consistent with this retaliation claim against defendant Gagle.

Beiler also alleges that on October 18, 2011, while under Officer Gagle's supervision, he was assaulted by two inmates who were known to the defendants to pose a danger to other inmates. Whether or not this constituted retaliation, it certainly states a claim for failure to protect. Prison and jail officials "have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. at 833, *quoting Cortes-Quinones v. Jimenez-Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988). Deliberate indifference in such circumstances is

defined as "criminal recklessness." *Id*, 511 U.S. at 839-840. An "official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* 511 U.S. at 847.

Deliberate indifference is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992), *citing McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir. 1991). A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.), *cert. denied*, 479 U.S. 816 (1986); *see Sellers v. Henman*, 41 F.3d 1100 (7th Cir. 1994); *Duane v. Lane*, 959 F.2d at 677. Giving Beiler the benefit of the inferences to which he is entitled at the pleading stage, he states a viable Eighth or Fourteenth Amendment failure to protect claim against Defendants Newton, Keever, and Gagle.

Count 6 finally alleges that from December 12, 2011 through January 18, 2012, Sheriff Newton ordered Beiler placed in segregation. Giving Beiler the benefit of the inferences to which he is entitled at the pleading stage, I cannot say that he can prove no set of facts consistent with this retaliation claim against Sheriff Newton.

### VIII. DENIAL OF VISITATION WITH PLAINTIFF'S MINISTER

In Count 7 of his third amended complaint, Beiler alleges that from August 25, 2011 to February 24, 2012, he was denied his right to visit with his Jehovah's Witness minister in violation of the Constitution's First, Fifth, Eighth, and Fourteenth Amendments. This allegation states no claim under the Fifth Amendment's due process clause, nor does it implicate the Eighth

Amendment's cruel and unusual punishments clause, which deals with physical conditions of confinement.

Under the First Amendment, prisoners "retain the right to practice their religion to the extent that such practice is compatible with the legitimate penological demands of the state." *Al-Alamin v. Gramley*, 926 F.2d 680, 686 (7th Cir. 1991). A prison or jail regulation or policy that might otherwise unconstitutionally impinge on an inmate's First Amendment rights will survive a challenge if it is reasonably related to legitimate penological interests. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) and *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 353 (1987). "[T]he prison is entitled to curtail these rights to the extent necessary to protect security." *Johnson-Bey v. Lane*, 863 F.2d 1308, 1310 (1988).  Giving Beiler the benefit of the inferences to which he is entitled, his First Amendment claim that the defendants deprived him of his right to practice his religion is sufficient to survive dismissal at the pleading stage.

Beiler also asserts that jail officials allowed prisoners of other faiths to receive visits from their ministers. The Fourteenth Amendment's equal protection clause prohibits discrimination and requires the evenhanded treatment of all religions.  In providing inmates the opportunity to practice their religion, the efforts of jail administrators, "when assessed in their totality, must be evenhanded. Prisons cannot discriminate against a particular religion. The rights of inmates belonging to minority or non-traditional religions must be respected to the same degree as the rights of those belonging to larger and more traditional denominations. Of course, economic and, at times, security constraints may require that the needs of inmates adhering to one faith be accommodated differently from those adhering to another.  Nevertheless, the treatment of all inmates must be qualitatively comparable." *Al-Alamin v. Gramley*, 926 F.2d 680, 686  (7th Cir. 1991) (citations omitted).  Giving Beiler the benefit of the inferences to which he is entitled at

the pleading stage, the court cannot say that he can prove no set of set of facts consistent with his Fourteenth Amendment equal protection claim.

### IX. DENIAL OF SCRIBE MATERIALS AND ACCESS TO THE COURTS

In Count 8 of his third amended complaint, Beiler alleges that the defendants refused to provide him with some information he requested, such as the mailing address of Swanson Services Corporation, and did not provide him with sufficient paper or scribe materials such as sharp pencils, all of which interfered with his ability to prepare and file lawsuits To establish a violation of the right to access to the courts, an inmate must establish that jail officials failed to provide the assistance required by *Bounds v. Smith,* 430 U.S. 817 (1977), and show that he suffered actual injury. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds v. Smith* did not eliminate the actual-injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). The actual-injury requirement applies even in cases "involving substantial systematic deprivation of access to court," including the "total denial of access to a library," or "an *absolute* deprivation of access to all legal materials" *Id.* at 2181 n. 4 (emphasis in original).

Standing alone, delay and inconvenience do not rise to the level of a constitutional deficiency, *Campbell v. Miller*, 787 F.2d 217, 229 (7th Cir. 1986), *cert. denied*, 479 U.S. 1019 (1986), and Beiler does not allege that he suffered any actual harm from not receiving Swanson Services Corporation's address on his first request, or from receiving limited amounts of scribe materials. The record of this case establishes that over a three-month period while he was at the jail, Beiler was able to file his original complaint on November 4, 2011 [DE 1], a twenty-six page amended complaint on December 2, 2011 [DE 7], a thirty-seven page second amended complaint on January 5, 2011 [DE 13], a seventeen page motion for preliminary injunction on January 9, 2011, [DE 17], a fourteen page supplement to his amended complaint on January 10,

2012 [DE 19], and a forty-six page supplement to his amended complaint on February 3, 2012 [DE 23]. The record therefore belies his assertion and makes his access to the courts claim implausible. It will therefore be dismissed.

## X. DEFENDANTS "RACHEL, MATRON #1" AND SWANSON SERVICES CORPORATION

Liability under § 1983 requires personal participation or responsibility, by means of a causal link between a particular defendant's action and the plaintiff's injury. *Burks*, 555 F.3d at 594. Beiler's third amended complaint names five defendants other than the Sheriff's Office and Jail, and is organized into eight counts. Having screened the complaint, I am dismissing several claims and allowing the plaintiff to proceed on all or portions of four counts.

Beiler alleges that Defendants Newton, Keever, and Gagle are all involved in at least some of the claims that will be going forward. But Swanson Services Corporation and "Rachel, Matron #1" are not involved in any of the surviving claims. Accordingly, I will dismiss Swanson Services Corporation and "Rachel, Matron #1" from this action.

## XI. INJUNCTIVE AND DECLARATORY RELIEF CLAIMS

Beiler's third amended complaint seeks damages and injunctive relief [DE 32 at 28]. Beiler was housed at the Jay County Jail when the events he complains of occurred, but he was released after he filed his second amended complaint and before he filed his third amended complaint, and he is no longer confined at the Jay County Jail. If a prisoner is released or transferred to another facility, his request for injunctive relief against officials of the first facility is moot unless "he can demonstrate that he is likely to" return to the facility. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996), quoting *Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988). A prisoner's transfer or release also renders his claims for declaratory relief moot. *Higgason v. Farley*, 83 F.3d at 811, citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (applying the

16

capable-of-repetition doctrine without discrimination between claims for declaratory relief and claims for injunctive relief).

Beiler is no longer confined at the Jay County Jail, and although it is possible that Beiler could return to the jail in the future, the mere possibility is insufficient. The standard to be applied here is whether he is "likely" to return to the jail. There is no reasonable basis for the court to conclude that Beiler is likely to return to the Jay County Jail, and his release renders his requests for injunctive and declaratory relief against Jay County Jail officials moot. *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *Martin v. Davies*, 917 F.2d 336, 339 (7th Cir. 1990), *cert. denied* 501 U.S. 1208 (1991).

## CONCLUSION

For the foregoing reasons, the Court:

(1) GRANTS the Plaintiff leave to proceed against Defendants Larry Ray Newton, Jr., Nathan Keever, and Betsy Gagle for damages on the following claims of the third amended complaint:

Plaintiff's claim in Count 2 that the diet provided to him at the jail subjected him to cruel and unusual punishment for the period between on December 2, 2011 and February 24, 2012;

the claim in Count 4 that Jay County Jail officials left Plaintiff in a cold cell without adequate clothing for the period from December 2, 2009 through December 13, 2009;

the claim in Count 6 that on September 29, 2011, Defendant Gagle read Plaintiff's legal file and on September 30, 2011, "arbitrarily placed him in isolated confinement for two days as punishment;

the claim in Count 6 that on October 18, 2011, the Defendants failed to protect Plaintiff from being assaulted by other inmates;

the claim in Count 6 that Defendant Newton placed Plaintiff in segregation from December 12, 2011 through January 18, 2012, without justification; and

the claim in Count 7 that the Defendants violated Plaintiff's First and Fourteenth Amendment rights by denying him access to his minister;

(2) DISMISSES, pursuant to 28 U.S.C. § 1915A, all other claims, and DISMISSES Defendants Jay County Sheriff's Office, Jay County Security Center, Rachael, Matron #1, and Swanson Services Corporation;

(3) Pursuant to 42 U.S.C. § 1997e(g)(2), ORDERS that Defendants Newton, Keever, and Gagle respond to the third amended complaint as provided for in the Federal Rules of Civil Procedure; and

(4) DIRECTS the Marshals Service to effect service of process on Defendants Newton, Keever, and Gagle on the Plaintiff's behalf, and DIRECTS the clerk's office to ensure that a copy of this order is served on them along with the summons and third amended complaint.

**SO ORDERED**.

ENTERED: July 13, 2012

　　　　　　　　　　　　　　　　　　　　　　　　／s/ Philip P. Simon　　　　
　　　　　　　　　　　　　　　　　　　　　　　Philip P. Simon, Chief Judge
　　　　　　　　　　　　　　　　　　　　　　　United States District Court